**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

TONY TERRELL GOLDEN,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. C 12-4012-MWB
(No. CR 09-4039-MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S SECTION 2255
MOTION**

———————————

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*  *The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*  *The § 2255 Motion*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.*  *LEGAL ANALYSIS*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.*  *Standards For § 2255 Relief*  . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B.*  *Procedural Matters*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *1.*   *Preliminary matters*  . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *2.*   *Procedural default*  . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *C.*  *Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 9
        *1.*   *Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2.*   *Actual innocence*  . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *3.*   *Objection to quantity determination*  . . . . . . . . . . . . . . . 18
        *4.*   *Failure to object to prior criminal history*  . . . . . . . . . . . . 19
    *D.*  *Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*III.*  *CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I.  INTRODUCTION

This case is before me on petitioner Tony Terrell Golden's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1), filed on January 23, 2012.  Golden claims that the attorney who represented him at the trial level provided him with ineffective assistance of counsel. The respondent denies that Golden is entitled to any relief on his claims.

### A.  The Criminal Proceedings

On July 23, 2009, Golden was charged by a three-count Indictment (Crim. docket no. 1).  Count one charged Golden with conspiracy to distribute 50 grams or more of "crack cocaine" from about 2004 through June 26, 2009.  *See* Crim. docket no. 1.  Count two charged Golden with possession with intent to distribute 50 grams or more of "crack cocaine" on or about June 26, 2009.  Count three charged Golden with distribution of 2.6 grams of "crack cocaine" on or about June 3, 2009, within 1000 feet of a public school. *See* Crim. docket no. 2.  On July 31, 2009, Golden signed and filed a Written Waiver Of Personal Appearance At Arraignment (Crim. docket no. 4), which contained a plea of not guilty to all three counts of the indictment.  On July 31, 2009, then Chief United States Magistrate Judge Paul A. Zoss entered an Order accepting the waiver of the appearance of Golden and entering his plea of not guilty to each count.  *See* Crim. docket no. 4.

On October 16, 2009, Golden appeared in front of Judge Zoss and entered his plea of guilty to count one and count two of the indictment.  *See* Crim. docket no. 12.  Judge Zoss signed and filed a Report And Recommendation Concerning Plea of Guilty (Crim.

docket no. 13), recommending acceptance of Golden's guilty pleas, on October 16, 2009. I entered an Order Concerning Magistrate's Report And Recommendation Regarding Defendant's Guilty Plea (Crim. docket no. 16), thereby accepting Golden's guilty pleas, on November 2, 2009.

Golden filed a Motion For Downward Variance (Crim. docket no. 21), on December 23, 2009, on the basis of the sentencing disparity between crack and powder cocaine. On January 4, 2010, the Government filed a Response To Defendant's Motion For Variance (Crim. docket no. 24), asserting that even if the sentencing disparity between crack and powder cocaine were considered a mitigating factor, there were sufficient aggravating factors in Golden's case, including Golden's past history of violence and his past and current involvement in drugs, to support denial of a downward variance. *See* Crim. docket no. 24.

Golden appeared before me for sentencing on January 5, 2010. *See* Crim. docket no. 25. I found that the total offense level was 30, that the criminal history category was 4, that the advisory guideline range was 135 to 168 months and that there was a mandatory minimum ten year sentence. Sent. Trans. at 21-22. I then denied Golden's motion for a downward variance, and instead varied upward on the ground that Golden's selling of drugs was entered into and continued out of greed and not because of a dependence on drugs, he had virtually no work history, his prior violent criminal history, and his prior record of parole revocations, as well as the fact that Golden's prior conviction for attempted murder took place as part of a crack cocaine deal, were all aggravating factors. Sent. Trans. at 22-23. I varied upward to a 180 month sentence, on counts one and two, to run concurrently. Sent. Trans. at 23.

Golden, by counsel, filed a Notice of Appeal (Crim. docket no. 32), to the United States Court of Appeals for the Eighth Circuit on January 15, 2010. On January 21, 2010,

Golden filed an Amended Notice of Appeal (Crim. docket no. 36). On August 29, 2010, the Eighth Circuit Court of Appeals, on a per curiam basis, affirmed Golden's sentence, finding that the record indicated an adequate justification for my upward variance and my analysis of the § 3553(a) factors. *See* Crim. docket no. 45.

### B. The § 2255 Motion

On September 6, 2011, Golden filed a *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1). On September 7, 2011, Golden filed a *Pro Se* Supplement (Civ. docket no. 3), to his § 2255 Motion, providing an affidavit in support of his motion. The Respondent filed an Answer (Civ. docket no. 4), on September 30, 2011. On March 29, 2012, Golden, by counsel, filed an Opening Brief (Civ. docket no. 8). The Respondent filed a Government's Response And Memorandum In Support Of Government's Response To Defendant's Motion (Civ. docket no. 13), on May 30, 2010. Golden, by counsel, filed a Reply To Government's Responsive Brief (Civ. docket no. 14), on June 29, 2010.

## II. LEGAL ANALYSIS

### A. Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to

> collateral attack, may move the court which imposed the
> sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to

correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Golden's claims for § 2255 relief.

## B. Procedural Matters

### 1.    Preliminary matters

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. § 2255. On the other hand, an evidentiary hearing is necessary where "'the court is presented with some reason to question the evidence's credibility.'" *Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (quoting 1 Liebman and Hertz, Federal Habeas Corpus Practice and Procedure § 19.5, at 723 (3rd ed. 1998); *id.* at 1033 n.6 (also quoting 28 U.S.C. § 2254, Rule 7 advisory committee's note (1994), made applicable to § 2255 by reference, as stating, "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."); *see also Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion in not holding an evidentiary hearing on a § 2255 claim of failure to call alibi witnesses, because the record before the district court "contained sharply conflicting evidence"). Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro*, 538 U.S. at 500, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion.

In this case, I conclude that no evidentiary hearing is required on any issue because the record conclusively shows that Golden's allegations either cannot be accepted as true,

because they are contradicted by the record, or because, even if Golden's allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132. "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted)). Specifically with regard to Golden's claim of actual innocence, where, as here, the record is clear that the movant admitted to underlying facts that would support a conviction, an evidentiary hearing is not necessary. *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999).

### 2. *Procedural default*

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To the extent that I can construe Golden's claims as claims of ineffective assistance of counsel, I will consider them on the merits.

### C. Ineffective Assistance Of Counsel

#### 1. Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689). Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell

> below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S. Ct. 2052.

*Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*). There are two substantial impediments to making the required showing of deficient performance. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King*, 595 F.3d at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice. *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ––––, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. However, even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential. Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

## 2. *Actual innocence*

Golden, *pro se*, argues as grounds one and two of his motion, that his trial attorney "knew or should have known that the Government lacked a factual basis to sustain a conviction for 'Conspriacy To Distribute 50 Grams or more of Crack Cocaine,'" and that his trial attorney "knew or should have known that the evidence was insuffiucient to charge

Petitioner with Conspiracy." *Pro Se* Brief at 2 & 5. The attorney appointed to represent Golden in these proceedings later cast these arguments as a claim of actual innocence. Brief In Support of Motion for Hearing, at 5.

Respondent asserts that Golden has not offered "any evidence supporting this claim, rather [he] merely states that [he] is actually innocent and, therefore, his attorney was ineffective for insisting that he plead guilty to the drug conspiracy." Response at 8. Respondent further argues that, in order to succeed with a claim of actual innocence, a petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted. Response at 8. Also, respondent argues, Golden admitted to his factual guilt during a post-*Miranda* interview and during his plea hearing. Response at 9.

I note that there is a difference between a "gateway claim" and a "freestanding claim" of actual innocence. *See House v. Bell*, 547 U.S. 518 (2006). A gateway claim of actual innocence, as previously recognized by the Supreme Court, exists when a petitioner attempts to avoid a procedural bar that would otherwise preclude him or her from bringing other claims. *See id.,* at 536-537; *Bousley v. United States*, 523 U.S. 614, 623 (1998). A claim of actual innocence serves as a gateway for the petitioner to argue his or her other claims before the *habeas* court. *House*, 547 U.S. at 536-537. Thus, it is a complement to the "cause and prejudice" standard that permits a petitioner to raise an otherwise procedurally barred claim. *See McNeal*, 249 F.3d 747, 749 (8th Cir. 2001)("A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence."). A freestanding claim of actual innocence, on the other hand, is a petitioner's attempt to prove his or her innocence outright. *See House*, 547 U.S. at 554-55; *see also Herrera v.Collins*, 506 U.S. 390, 417(1993)

13

(recognizing the possibility of such a claim). A successful freestanding claim of actual innocence would render any procedural bar irrelevant.

A freestanding claim of actual innocence, however, has never been explicitly recognized by the Supreme Court. *See House*, 547 U.S. at 555. The Supreme Court concluded, in *House*, "that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *Id*. The Court further established that the standard for any freestanding innocence claim would be "extraordinarily high." *Id*. (quoting *Herrera*, 506 U.S. at 417). While the Court did not further explain what an "extraordinarily high" standard would consist of, the Court did indicate that this standard would be higher than the standard for a successful "gateway" innocence claim. *Id*. ("The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*.").

While the standard for a "gateway" innocence claim is less demanding than its counterpart, it is still very strict. A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-537. Thus, first a petitioner must present "new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial." *Id*. at 537 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Armed with such evidence, a petitioner may then attempt to meet the "demanding" standard that "permits review only in the 'extraordinary' case." *Id*. at 538 (quoting *Schlup*, 513 U.S. at 327). In this case, I will assume the petitioner has made both claims.

Golden has not claimed that there is any new evidence to be presented as to the drug charges, but has merely claimed that there is insufficient evidence for his conviction. *See House*, at 547 U.S. 537 (requiring the petitioner to present new evidence). The standard for a successful gateway claim of actual innocence requires "new reliable evidence . . . that was not presented at trial," *Schlup*, 513 U.S. at 324 (emphasis added). In this case, Golden presents no new evidence in support of his claim of actual innocence. The lack of any new evidence, alone, is enough to deny Golden's claim when characterized as an actual innocence claim. *See House*, 547 U.S. at 537.

Second, the record in this case refutes Golden's argument of actual innocence. There is ample evidence in the record to demonstrate that, from about 2004 through June 26, 2009, Golden knowingly conspired with other persons, to distribute 50 grams or more of crack cocaine and that on June 26, 2009, Golden knowingly possessed with intent to distribute, 50 grams or more of cocaine. On June 3, 2009, a confidential informant called Golden to arrange the purchase of crack cocaine. Golden instructed this confidential informant to meet him at a specific location in Sioux City, Iowa, where Golden approached the confidential informant's vehicle, took $300 and placed three rocks of crack cocaine in the confidential informant's hand. PSIR at 5. On June 18, 2009, the confidential informant called Golden to purchase $100 of crack cocaine in Sioux City, Iowa; the confidential informant met Golden and purchased $100 worth of crack cocaine. PSIR at 5. On June 26, 2009, during a search of Golden's vehicle, four bags of crack cocaine and one bag of powder cocaine were found underneath the rear seat of the vehicle, for a total of 99.23 grams of crack cocaine and 28.35 grams of powder cocaine. PSIR at 6. During a post-*Miranda* interview, Golden reported that he purchased three and one-half ounces of crack cocaine and one ounce of powder cocaine for $1,200 per ounce, with the intention of selling it in Sioux City. PSIR at 6. Golden also informed officers that, in 2006, he

brought one-quarter ounce of crack cocaine to Sioux City to sell. PSIR at 6. During a July 1, 2009 debriefing interview, the defendant stated that, from December 2008 through May 2009, he purchased a minimum of one ounce of crack cocaine two times each month, and that he paid $1,000 per ounce for it and sold it for $1,800. PSIR at 6. Golden also stated that during mid-May 2009, he traveled to Sioux City and met Tamara Johnson and Ida Thomas, who both told Golden that they could help him sell crack cocaine in Sioux City. PSIR at 6. Golden returned to Arkansas and purchased one ounce of crack cocaine, which he brought back to Sioux City and sold in less than one week for at least $2,800. PSIR at 6. Golden stated that Johnson brought him all of his customers and, in return, he provided her with rock cocaine. PSIR at 6. Golden also stated that, on about June 15, 2009, he returned to Sioux City and helped his half-brother, Terry Nichols, sell ten grams of crack cocaine. PSIR at 6. Golden at no time objected to these sections of the PSIR.

Golden entered into a written plea agreement (Crim. docket no. 14) with the government on September 15, 2009. For purposes of the plea agreement, Golden stipulated to each of the above-mentioned facts. Plea Agreement at 6-8. In fact, in several instances, for purposes of the plea agreement, Golden corrected both the quantity and the type of drug involved in the various transactions. Plea Agreement, 6-8.

During his plea hearing, Judge Zoss explained the charges against Golden and listed the elements of the crimes. Hrg. Trans. 8-14. Judge Zoss determined that Golden understood each and every element and ascertained that his counsel had explained each and every element fully to him. Hrg. Trans. 8-14. Judge Zoss then elicited a full and complete factual basis for all elements to which Golden was pleading guilty. Hrg. Trans. 8-14. Golden at no time presents any new evidence to refute these facts. Based on the existing record, objective, reasonable jurors could have found Golden guilty. Therefore, the defendant has not made a successful showing to establish a "gateway" claim of actual

innocence. *See Bousley*, 523 U.S. at 623-23 (noting "that 'actual innocence' means factual innocence, not mere legal insufficiency" (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). As such, Golden has also failed to meet the higher standard required for a successful freestanding claim of actual innocence.

If Golden's claims in grounds one and two of his Motion are construed as claims of insufficient evidence, Golden is procedurally barred from making such claims because he did not raise them on direct appeal.

Further, if these claims are construed as claims that his trial counsel provided ineffective assistance by failing to move to suppress his statements, or by convincing Golden to plead guilty to a crime for which he now thinks that there was insufficient evidence for a conviction, these claims still fail. Golden has provided no basis for suppression of his post-*Miranda* admissions, which taken together with the evidence found during a search of Golden's vehicle, provide more than sufficient evidence for a conviction. In exchange for pleading to these two counts, the government dismissed a third count, distribution of 2.6 grams of crack cocaine within 1000 feet of an elementary school. *See* Crim. docket no. 1. Also, if Golden had gone to trial and been convicted, he would not have received a three point reduction for acceptance of responsibility, raising his offense level, without even including the third offense, to an offense level of 33, raising his guideline range from 135 to 168 months to 188 to 235 months. Under these circumstances, I find that it was eminently reasonable for his trial counsel to advise Golden to de-brief and plead guilty to counts one and two of the indictment. *See Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.").

For all of the above reasons, Golden's claim of actual innocence or ineffective assistance, related to the factual basis for his conviction, fail.

### 3.    *Objection to quantity determination*

Golden argues that his trial counsel provided ineffective assistance by failing to object to the drug quantity calculation at sentencing because he should not have been held responsible for amounts calculated on the basis of a drug conspiracy, because there was no factual basis for the conspiracy conviction. Brief at 9-10. Golden's habeas counsel asserts that "without the crack conspiracy conviction, it would have been much more difficult to attribute relevant conduct to the instant offense." Brief in Support of Motion for Oral Hrg. at 6. Respondent argues that Golden is responsible for the entire conspiracy drug quantities because he admitted his involvement in the conspiracy in his plea agreement, and did not object to the factual basis in the PSIR and during his plea hearing. Response at 13.

As discussed above, I believe that a sufficient factual basis was established for the conspiracy conviction and Golden has not, in these proceedings, established his innocence. Therefore, I find that all of the drug quantities, for which Golden was held responsible, were related to acts "in furtherance of the conspiracy and either known to Golden or reasonably foreseeable to him." *United States v. Miller*, 698 F.3d 699, 708 (8th Cir. 2010). Golden has not established either that his trial counsel performed deficiently or that he was prejudiced. *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). Golden's claim that his trial counsel provided ineffective assistance, by failing to object to the drug quantity at sentencing, fails.

#### 4.    *Failure to object to prior criminal history*

Golden claims that his trial counsel failed to object to certain factual allegations in the PSIR related to one of Golden's prior conviction, and his conduct during the service of the sentence related to that conviction.  Brief at 12-13.  Golden's counsel for this motion explains that Golden believes that his trial counsel should have presented mitigating factors relating to the prior conviction.  Brief in Support of Mot. for Hrg. at 8.  Further, Golden, by counsel, argues that Golden's trial counsel should have made it clear that Golden was the victim of the prior crime, not the perpetrator, and was simply trying to protect himself.  Brief in Support of Mot. for Hrg. at 8.  Respondent asserts that trial counsel did in fact object to some of the factual allegations of the paragraph relating to the prior conviction.  Response at 15.  Respondent further argues that the police records admitted into evidence, and considered at the sentencing hearing, clearly refute Golden's assertion that his prior conviction was a mistaken case of self-defense.  Response at 15-16.

At Golden's sentencing hearing, I varied upward based on Golden's history and characteristics, emphasizing his propensity for violence as demonstrated by a first degree attempted murder conviction.  On May 16, 2001, Golden was convicted of first degree attempted murder, in Mississippi County, Arkansas.  PSIR at para 42.  Golden's trial counsel did object to the factual allegations in this paragraph, although the form of his objections was a matter at issue during Golden's sentencing hearing.  (Sent. Trans. at  ).  Ultimately, because the police records introduced at the sentencing so clearly refute Golden's position that he was merely acting in self defense, Golden cannot establish that his trial counsel performed deficiently with regard to my consideration of this conviction during Golden's sentencing hearing.  It should also be noted that the United States Court of Appeals for the Eighth Circuit did not question my conclusion that the conviction was supported by police reports describing the incident.  (Crim. docket no 45, at 3).

Golden also appears to argue that I should not have considered his record of disciplinary problems while incarcerated on the above charge because his disciplinary problems were all attributable to a failure of the Arkansas Department of Corrections to provide any rehabilitation to him. Brief in Supp. of Mot. for Hrg. at 8. Respondent claims that this assertion has no bearing on the claim of ineffective assistance of counsel. Response at 16.

The record of Golden's sentencing hearing makes it clear that, even if the Arkansas Department of Corrections somehow failed to provide adequate rehabilitation to Golden, and I find no evidence of that here, that would not have altered Golden's sentence in this case. The upward variance in Golden's case did not hinge on his disciplinary record in prison, but on many other factors, particularly his 1st Degree Murder Conviction, the fact that he did not claim to be an addict or user of crack cocaine, but only a dealer, had virtually no work history, and his parole revocations. Sent. Trans. 23-24. Golden has not established his trial counsel's failure to argue that the Arkansas Department of Corrections failed to rehabilitate him.

Golden's claim for ineffective assistance, relating to his trial counsel's failure to argue that Golden was wrongly convicted of first degree murder when Golden was merely acting in self defense and that his trial counsel performed deficiently by failing to argue that Golden was denied the opportunity for rehabilitation, both fail, because Golden has not established either that his counsel's performance was deficient or that he was prejudiced. *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009).

### D. Certificate Of Appealability

Denial of Golden's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein. The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> * * *
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I find that Golden has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find my assessment of Golden's claims debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Golden does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

## III. CONCLUSION

Upon the foregoing, Golden's Motion Under 28 U.S.C. § 2255 (Civ. docket no. 1), is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2013.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA